**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **GIORGIO BENVENUTO**, <br><br> Plaintiff, <br><br> v. <br><br> **NIURKA DEL VALLE D'ARTHENAY GUZMAN**, <br><br> Defendant. | Civil Action No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

Plaintiff Giorgio Benvenuto ("Plaintiff" or "Mr. Benvenuto") files this Original Complaint and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendant Niurka del Valle D'Arthenay Guzman ("Defendant" or "Ms. D'Arthenay Guzman"), and in support thereof would respectfully show the Court as follows:

## I. NATURE OF THE ACTION

1.      This is a civil action arising from Venezuelan Defendant's systematic and malicious campaign of online harassment, defamation, cyberstalking, identity fraud, and property interference directed against Plaintiff. Over a period of months, Defendant has created fictitious online personas and profiles using fabricated aliases—including but not limited to "Victoria," "jvron," and "Wilfrido Vargas"—to post false, misleading, and defamatory statements about Plaintiff on social media platforms and in community forums, with the intent to destroy Plaintiff's personal and professional reputation, interfere with his business relationships, and inflict severe emotional distress.

1

2.      Defendant's unlawful conduct also extends beyond the digital realm. Defendant has engaged in vandalism of Plaintiff's vehicle, theft of packages from Plaintiff's residence, interference with Plaintiff's contractual relationships with service providers, and direct verbal defamation to third parties.

3.      Plaintiff brings this action asserting claims under both federal and Texas state law and seeks injunctive relief—including an immediate temporary restraining order, a temporary injunction, and a permanent injunction—as well as compensatory damages, exemplary damages, attorneys' fees, and all other relief to which Plaintiff is justly entitled.

## II. PARTIES

4.      Plaintiff Giorgio Benvenuto is an individual residing in Houston, Harris County, Texas. Plaintiff is a fitness professional and entrepreneur who operates under the professional brand "Gio Coach" and the social media account "Giofit Official," through which he conducts business and engages with clients, followers, and the public.

5.      Defendant Niurka del Valle D'Arthenay Guzman is an individual who, upon information and belief, resides in or around Houston, Harris County, Texas. Defendant may be served through her counsel, Muakum J. Sherman, 9494 Southwest Freeway, Ste. 601, Houston, Texas 77074 or at her usual place of abode located at 20514 Saddleback Chase Lane, Cypress, Texas 77433 or wherever she may be found.

## III. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Lanham Act, 15 U.S.C. § 1125(a).

7.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims as to form part of the same case or controversy.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Houston, Harris County, Texas, within the Southern District of Texas, Houston Division.

9.     This Court has personal jurisdiction over Defendant because Defendant resides in Texas, has committed tortious acts within the State of Texas, and has directed intentional conduct toward Plaintiff in Texas causing harm in Texas.

## IV. FACTUAL BACKGROUND

### A.     The Parties' Relationship and Prior Proceedings

10.     Plaintiff and Defendant were previously known to one another as couple. On or about June 24, 2025, Plaintiff filed a lawsuit against Defendant in Houston, Texas, related to a real property dispute between them which has recently been resolved.

11.     Since the filing of that real property lawsuit, Defendant has systematically engaged in an escalating pattern of retaliatory harassment, defamation, cyberstalking, property destruction, and interference with Plaintiff's personal and professional life.

### B.     Vehicle Vandalism—September 7, 2025

12.     Within days after Defendant had been served with the real property lawsuit, on September 7, 2025, at approximately 1:27 p.m., Plaintiff's 2020 Black Jeep Gladiator was vandalized. The numerals "911" were etched into the driver-side rear quarter panel of the vehicle using a sharp object, causing significant damage to the vehicle's exterior paint and body.

3

Photographic evidence documents the scratches and damage to the vehicle. *See* Exhibits 1 and 1-A.

13.     Upon information and belief, this act of vandalism was committed by Defendant or at Defendant's direction. *Id.* The inscription "911" is believed to be a threatening reference connected to an SEC investigation involving a former business partner of Plaintiff, a matter in which Plaintiff has not been found guilty of any wrongdoing. *Id.* Defendant has demonstrated knowledge of these proceedings and has used them as a basis for her defamatory statements. *Id.*

**C.     Package Theft—September 25, 2025**

14.     On September 25, 2025, at approximately 1:50 p.m., Defendant was captured on Plaintiff's Ring doorbell camera stealing an Amazon package from the front entrance of Plaintiff's residence. *See* Exhibits 1 and 1-B. The package had been delivered by Amazon and was addressed to Plaintiff. Evidence supporting this incident includes Ring camera footage, Amazon delivery confirmation, and proof of purchase. *Id.*

**D.     Interference with Contractor and Verbal Defamation—September 30, 2025**

15.     On September 30, 2025, at approximately 12:01 p.m., Plaintiff's Ring camera footage captured Defendant approaching an HVAC technician from Richmond Air who was completing an installation at Plaintiff's residence. Defendant asked the technician, "What are you doing on my property?" *See* Exhibits 1 and 1-C.

16.     Defendant then falsely stated to the technician that she was the owner of Plaintiff's home and claimed to have documentation proving ownership. *See* Exhibits 1 and 1-C. Defendant further stated to the technician that Plaintiff was "being investigated by the FBI" and that Plaintiff is "a criminal." *Id.* These statements were false, were made with actual malice or reckless disregard

for their truth or falsity, and were intended to interfere with Plaintiff's contractual relationship with the HVAC contractor and to damage Plaintiff's reputation. *Id.*

**E.    Cyber Harassment and Defamation via "Victoria" Alias--November 16, 2025**

17.    On November 16, 2025, at approximately 3:57 a.m., an individual using the alias "Victoria" posted multiple negative and defamatory comments on Plaintiff's public Instagram page, "Giofit Official." *See* Exhibits 1 and 1-D. The comments urged Plaintiff's followers to "Google Giorgio Benvenuto CFX case and see who Gio Coach really is; you'll be surprised." *Id.* These comments were posted repeatedly in rapid succession, constituting a coordinated campaign to damage Plaintiff's reputation among his followers, clients, and business contacts. *Id.*

18.    Prior to these postings, Plaintiff had blocked Defendant's known Instagram account. *See* Exhibit 1.  Upon information and belief, Defendant created the fictitious "Victoria" account specifically to circumvent Plaintiff's block and continue her campaign of harassment and defamation. *See* Exhibits 1 and 1-D.

19.    As a direct result of these defamatory postings, Plaintiff was forced to delete all of the comments and block the alias account. *See* Exhibits 1 and 1-D. Plaintiff was forced to cease posting content temporarily on his professional social media platform due to reputational concerns, directly impacting his ability to conduct business and engage with clients.  *See* Exhibit 1.

**F.    Direct Message Harassment via "jvron" Alias — February 12, 2026**

20.    On February 12, 2026, at approximately 8:50 p.m., an account using the alias "jvron" directly contacted one of Plaintiff's Instagram followers via direct message. *See* Exhibits 1 and 1-E. The message stated: "Giorgio benvenuto CFX. Be aware of who your dealing with. Be smart. Not the person you think he is, the imposter. Pending federal case for money scamming in

5 states. That house is NOT his, he is pending civil case for a house he is trying to live in and title is someone else." *See* Exhibits 1 and 1-E.

21.    These statements are false and defamatory. *See* Exhibit 1. They falsely accuse Plaintiff of being an "imposter," of engaging in "money scamming in 5 states," and of fraudulently occupying a home to which he has no title. *See* Exhibits 1 and 1-E. These statements were published to a third party—Plaintiff's follower—with the intent to damage Plaintiff's reputation and interfere with his personal and business relationships. *Id.*

22.    Upon information and belief, Defendant created the "jvron" alias account for the specific purpose of contacting Plaintiff's followers and associates to disseminate defamatory statements about Plaintiff while concealing her identity. *See* Exhibit 1.

**G.    Community Forum Defamation via "Wilfrido Vargas" Alias - June 2026**

23.    Additionally, a posting attributed to an alias "Wilfrido Vargas" was disseminated in community channels, stating: "Before welcoming Giorgio Benvenuto as a representative of TWKG Khan Insurance Services, I encourage community members to review the publicly available information concerning the SEC's case involving CriptoFX (CFX)." *See* Exhibits 1 and 1-F. The message further urged community members to search for "Giorgio Benvenuto CFX" and to "decide whether this is the type of representative they wish to support in the community." *Id.*

24.    Upon information and belief, this posting was authored by Defendant using the fictitious "Wilfrido Vargas" identity, consistent with her established pattern of creating fake personas to target Plaintiff. *Id.* The posting was calculated to interfere with Plaintiff's business relationship with TWKG Khan Insurance Services and to damage his professional standing in the community. *Id.*

**H.      Ongoing Pattern of Conduct**

25.      Defendant's conduct, as described above, constitutes an ongoing, escalating, and systematic campaign of harassment, defamation, cyberstalking, property destruction, theft, and interference with Plaintiff's personal and professional life. *See* Exhibits 1 and 1-A through 1-F. Defendant's conduct spans from at least September 2025 immediately following service of process on Defendant and continues to the present. *Id.*

26.      Defendant's creation and use of multiple fictitious online identities and referencing the real property dispute demonstrates a deliberate effort to evade detection and continue her tortious conduct despite Plaintiff's efforts to block and avoid her.  *Id.*

## V. CAUSES OF ACTION

**A.      VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**

27.      Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

28.      Defendant knowingly and intentionally accessed protected computers without authorization, or exceeded authorized access, by creating fictitious user accounts on Instagram and other online platforms using false identities including "Victoria," "jvron," and "Wilfrido Vargas," in violation of those platforms' terms of service, which prohibit the creation of fake accounts, impersonation, and harassment. *Id.*

29.      Defendant used such unauthorized access to obtain information from protected computers and to transmit communications and data (i.e., defamatory messages and postings) in furtherance of her tortious conduct, in violation of 18 U.S.C. § 1030(a)(2) and (a)(5). *Id.*

30.      Defendant's conduct was intentional and caused damage and loss to Plaintiff, including but not limited to economic damages from impairment of Plaintiff's business, loss of

goodwill, costs of investigation, and costs of responding to the unauthorized activity, aggregating to at least $5,000 in value during a one-year period, satisfying the threshold requirement of 18 U.S.C. § 1030(c)(4)(A)(i)(I). *Id.*

31.     Plaintiff is entitled to compensatory damages, injunctive relief, and other equitable relief pursuant to 18 U.S.C. § 1030(g).

**B.     VIOLATION OF THE LANHAM ACT — FALSE OR MISLEADING REPRESENTATIONS**

32.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33.     Plaintiff operates a commercial enterprise under the professional brand "Gio Coach" and the social media account "Giofit Official," through which he provides fitness coaching services, engages with clients, and promotes his business in interstate commerce.  *See* Exhibit 1.

34.     Defendant made false and misleading representations of fact in commercial advertising or promotion by posting statements on public forums and social media platforms that misrepresented the nature, characteristics, and qualities of Plaintiff and his business, including false accusations of criminal conduct, fraud, and imposture. *Id.*

35.     Defendant's false statements were disseminated to Plaintiff's actual and potential customers, clients, and business associates, and were likely to cause confusion or mistake as to Plaintiff's character, reputation, and fitness to conduct business.

36.     As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1125(a), Plaintiff has suffered and continues to suffer damages, including lost revenue, lost business opportunities, diminished goodwill, and damage to his professional reputation. Plaintiff is entitled to injunctive relief, damages, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116, 1117.

**C.      CYBERSTALKING UNDER FEDERAL LAW (18 U.S.C. § 2261A)**

37.      Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

38.      Defendant, with the intent to harass, intimidate, and cause substantial emotional distress to Plaintiff, used interactive computer services and electronic communication services to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Plaintiff, in violation of 18 U.S.C. § 2261A(2)(B). *See* Exhibit 1.

39.      Defendant's course of conduct includes the creation of multiple fictitious online identities, the repeated posting of defamatory statements, the direct messaging of Plaintiff's associates and followers with false and damaging information, and the ongoing pattern of harassment spanning multiple months and platforms. *Id.*

40.      Plaintiff is entitled to all remedies available under 18 U.S.C. § 2261, *et seq.*, and any other applicable provision of law, including compensatory damages and injunctive relief.

**D.      DEFAMATION — LIBEL**

41.      Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

42.      As detailed in Exhibits 1 and 1-D through 1-F, Defendant published false and defamatory statements of fact concerning Plaintiff in written form on publicly accessible social media platforms and online forums, including but not limited to:

a. Statements under the alias "Victoria" urging the public to investigate Plaintiff's involvement in a "CFX case," implying criminal wrongdoing;

b. Statements under the alias "jvron" accusing Plaintiff of being an "imposter," engaging in "money scamming in 5 states," and fraudulently occupying a home;

c. Statements under the alias "Wilfrido Vargas" designed to dissuade community members from supporting Plaintiff in his professional capacity and implying that Plaintiff is unfit for professional engagement.

43. These statements were published to third parties, including Plaintiff's Instagram followers, clients, business associates, and community members.

44. The statements are false. Plaintiff has not been charged with or found guilty of any criminal wrongdoing.

45. Defendant published these statements with actual malice—that is, with knowledge that they were false or with reckless disregard for their truth or falsity—or, at a minimum, with negligence as to their truth or falsity.

46. The statements are defamatory per se because they impute criminal conduct, dishonesty, and unfitness in Plaintiff's trade, business, or profession.

47. As a direct and proximate result of Defendant's defamatory publications, Plaintiff has suffered damages, including but not limited to harm to his personal and professional reputation, lost business and revenue, emotional distress, humiliation, and mental anguish.

**E.     DEFAMATION — SLANDER**

48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. On September 30, 2025, Defendant made oral statements to an HVAC technician from Richmond Air at Plaintiff's residence in attempting to interfere with the servicing of Plaintiff's

10

residential HVAC, falsely stating that Plaintiff was "being investigated by the FBI" and that Plaintiff is "a criminal." *See* Exhibit 1.

50.     These oral statements were published to a third party, were false, were made with actual malice or reckless disregard for their truth or falsity, and are defamatory per se because they impute criminal conduct to Plaintiff.

51.     As a direct and proximate result of Defendant's slanderous statements, Plaintiff has suffered damages, including harm to reputation, emotional distress, and mental anguish.

**F.      BUSINESS DISPARAGEMENT**

52.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     Defendant published false and disparaging statements concerning Plaintiff's business, professional qualifications, and fitness to serve as a representative of TWKG Khan Insurance Services and as a fitness professional operating under the "Gio Coach" and "Giofit Official" brands. *See* Exhibits 1 and 1-D.

54.     Defendant published these statements with malice—that is, with knowledge of their falsity or with reckless disregard as to their truth or falsity.

55.     As a direct and proximate result of Defendant's disparaging publications, Plaintiff has suffered special damages, including lost clients, lost business opportunities, and diminished revenue.

**G.      TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS**

56.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

11

57.     Plaintiff had valid, existing contractual relationships, including but not limited to a contract with Richmond Air for HVAC installation services at his residence. *See* Exhibits 1 and 1-C.

58.     Defendant was aware of such contractual relationships and willfully and intentionally interfered with those relationships by confronting the HVAC technician, falsely claiming ownership of Plaintiff's property, demanding that work cease, and making defamatory statements about Plaintiff to the technician. *Id.*

59.     Defendant's interference was independently tortious and was not justified or privileged.

60.     As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered actual damages, including disruption of contracted services and additional costs.

**H.     TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

61.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62.     Plaintiff had a reasonable probability of entering into or continuing business relationships with clients, followers, and associates, including but not limited to his relationship with TWKG Khan Insurance Services and his client base cultivated through the "Giofit Official" social media platform. *See* Exhibit 1.

63.     Defendant was aware of these prospective business relationships and intentionally interfered with them by publishing defamatory statements designed to dissuade third parties from engaging with or supporting Plaintiff in his professional capacity. *See* Exhibit 1.

64.     Defendant's conduct was independently tortious (constituting defamation, fraud, and harassment), and her interference was not justified or privileged.

65.    As a direct and proximate result of Defendant's tortious interference, Plaintiff has suffered actual damages, including lost business, lost revenue, and diminished professional goodwill.

**I.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

66.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

67.    Defendant's conduct—including creating multiple fictitious online identities, posting repeated defamatory statements, directly contacting Plaintiff's associates with false accusations, vandalizing Plaintiff's vehicle, stealing packages from his residence, and confronting service providers at his home with false claims and defamatory statements—was extreme and outrageous. *See* Exhibit 1.

68.    Defendant acted intentionally or with reckless disregard for the probability of causing Plaintiff severe emotional distress.

69.    As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including anxiety, humiliation, fear, sleeplessness, and impairment of his personal and professional well-being.

**J.    INVASION OF PRIVACY — FALSE LIGHT**

70.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71.    Defendant, through her numerous false publications, placed Plaintiff before the public in a false light by attributing to him criminal conduct, fraud, and dishonesty that are not true. *See* Exhibit 1.

72. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

73. Defendant acted with actual malice—knowledge of or reckless disregard for the falsity of the publicized matter and the false light in which Plaintiff would be placed.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including emotional distress, humiliation, and reputational harm.

**K.    CONVERSION**

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. On September 25, 2025, Defendant unlawfully exercised dominion and control over Plaintiff's personal property—specifically, an Amazon package delivered to and addressed to Plaintiff at his residence—by removing and taking possession of the package without Plaintiff's knowledge or consent. *See* Exhibits 1 and 1-B.

77. Defendant's exercise of dominion and control over Plaintiff's property was unauthorized and was inconsistent with Plaintiff's rights as the owner of the property. *See* Exhibit 1.

78. As a direct and proximate result of Defendant's conversion, Plaintiff has suffered damages in the amount of the value of the stolen property and its contents, plus any consequential damages.

**L.    TRESPASS TO CHATTELS / CRIMINAL MISCHIEF (CIVIL DAMAGES)**

79. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

80.    Within days after being served with process, on September 7, 2025, Defendant, or an agent acting at Defendant's direction, intentionally damaged Plaintiff's 2020 Black Jeep Gladiator by etching the numerals "911" into the driver-side rear quarter panel using a sharp object, causing damage to the vehicle's paint and body. *See* Exhibits 1 and 1-A.

81.    Defendant's conduct constitutes a trespass to Plaintiff's chattel, resulting in the impairment of the condition, quality, and value of the vehicle.

82.    Plaintiff is entitled to recover damages for the cost of repair or diminution in value of the vehicle, as well as any consequential damages, pursuant to Texas common law and Texas Penal Code § 28.03 (civil liability for criminal mischief).

**M.    VIOLATION OF THE TEXAS HARMFUL ACCESS BY COMPUTER ACT**

83.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

84.    Defendant knowingly accessed computer networks, social media platforms, and electronic communication systems without effective consent—or in a manner that exceeded any authorized access—by creating fictitious user accounts in violation of platform terms of service, and used such access to harm Plaintiff by publishing defamatory statements, sending harassing communications, and interfering with Plaintiff's use of those platforms. *See* Exhibit 1.

85.    Defendant's conduct constitutes a violation of the Texas Harmful Access by Computer Act.

86.    Plaintiff is entitled to recover compensatory damages, attorneys' fees, costs, and injunctive relief pursuant to Tex. Civ. Prac. & Rem. Code § 143.002.

### N.    TEXAS THEFT LIABILITY ACT

87.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88.    Defendant's removal of Plaintiff's Amazon package from Plaintiff's residence constitutes theft as defined by the Texas Penal Code § 31.03, which provides the basis for civil liability under the Texas Theft Liability Act. *See* Exhibits 1 and 1-B.

89.    Plaintiff is entitled to recover actual damages, a statutory penalty, court costs, and reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 134.005.

### O.    CIVIL CONSPIRACY

90.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

91.    Upon information and belief, Defendant conspired with one or more other persons, or alternatively acted through agents or co-conspirators, to carry out the unlawful acts described herein, including the creation and operation of multiple fictitious online identities, the publication of defamatory statements, and the vandalism of Plaintiff's property.

92.    Defendant and her co-conspirators had a meeting of the minds on the object or course of action to be taken, and they committed one or more unlawful, overt acts in furtherance of the conspiracy that proximately caused injury to Plaintiff.

93.    Plaintiff is entitled to recover damages resulting from the conspiracy, including all damages recoverable under the underlying torts.

### P.    IDENTITY THEFT AND IMPERSONATION

94.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95.     Defendant created and used fraudulent online identities, including "Victoria," "jvron," and "Wilfrido Vargas," for the purpose of committing tortious and unlawful acts against Plaintiff, including defamation, harassment, and interference with business relationships. See Exhibits 1 and 1-D through 1-F.

96.     Defendant's creation of fictitious identities and use of those identities to deceive third parties and harm Plaintiff constitutes actionable identity fraud and impersonation under Texas law.

97.     Plaintiff is entitled to recover actual damages, court costs, attorneys' fees, and injunctive relief.

## VI.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

98.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

### A.     Temporary Restraining Order and Temporary Injunction

99.     Plaintiff seeks the immediate issuance of a Temporary Restraining Order ("TRO") without notice, and thereafter a Temporary Injunction following a hearing, pursuant to Federal Rule of Civil Procedure 65, restraining and enjoining Defendant, her agents, servants, employees, attorneys, and all persons in active concert or participation with her, from:

a.      Creating, maintaining, or operating any social media account, online profile, or digital identity using any name, alias, or pseudonym other than her own legal name for the purpose of communicating about, contacting, or publishing information concerning Plaintiff;

b.      Posting, publishing, transmitting, or disseminating any false, defamatory, or disparaging statements about Plaintiff on any social media platform, website, online forum, or any other medium of communication;

c.      Contacting, messaging, or communicating with any of Plaintiff's followers, clients, business associates, family members, or other third parties for the purpose of making statements about Plaintiff or Plaintiff's business, reputation, or character;

d.      Accessing, approaching, entering, or coming within 200 feet of Plaintiff's residence, place of business, or vehicle;

e.      Vandalizing, damaging, defacing, or otherwise interfering with Plaintiff's real or personal property;

f.      Removing, taking, intercepting, or otherwise interfering with packages, mail, or deliveries addressed to or intended for Plaintiff;

g.      Interfering with or disrupting any contractual relationship between Plaintiff and any third party, including but not limited to contractors, service providers, clients, and business associates;

h.      Engaging in any other act of harassment, stalking, surveillance, intimidation, or threatening conduct directed at Plaintiff or any person associated with Plaintiff.

### B.      Grounds for Injunctive Relief

100.    **Likelihood of Success on the Merits.** As set forth above, Plaintiff has presented substantial evidence demonstrating that Defendant has engaged in defamation, cyberstalking, harassment, computer fraud, tortious interference, and other unlawful conduct. Plaintiff is likely to succeed on the merits of his claims. *See* Exhibits 1 and 1-A through 1-F.

101.    **Irreparable Harm.** Plaintiff will suffer irreparable harm absent injunctive relief. Defendant's ongoing campaign of defamation and harassment causes continuing and compounding damage to Plaintiff's personal and professional reputation that cannot be adequately remedied by monetary damages alone. Plaintiff has already been forced to curtail his professional social media activity due to Defendant's conduct, and each additional defamatory posting causes further irreparable injury. *See* Exhibit 1. Additionally, Defendant's escalating conduct—from online harassment to physical vandalism and theft—poses a threat to Plaintiff's safety and security. *Id.*

102.    **Balance of Equities.** The balance of equities tips decidedly in Plaintiff's favor. Plaintiff seeks only to prevent Defendant from engaging in unlawful conduct—creating fake identities, publishing false statements, stealing property, and vandalizing Plaintiff's vehicle. Defendant has no legitimate interest in continuing such unlawful behavior, and the injunctive relief

sought imposes no undue burden on Defendant beyond requiring her to refrain from tortious and criminal conduct.

103.    **Public Interest.** The public interest favors the issuance of injunctive relief. The public has a strong interest in preventing cyberstalking, identity fraud, and defamation. Enjoining Defendant's unlawful conduct protects both Plaintiff and the public from the corrosive effects of online harassment and disinformation.

### C.    Permanent Injunction

104.    Plaintiff further requests that, upon final trial or other disposition of this matter, the Court enter a Permanent Injunction containing the same prohibitions set forth above, permanently restraining and enjoining Defendant from engaging in any of the conduct described herein.

### D.    Bond

105.    Plaintiff is prepared to post such bond as the Court may require in connection with the issuance of injunctive relief, pursuant to Federal Rule of Civil Procedure 65(c).

### VII. DAMAGES

106.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer the following categories of damages:

a.    **Actual and compensatory damages**, including but not limited to lost income and revenue, lost business opportunities, diminished professional goodwill, costs of repairing damaged property, value of stolen property, costs of investigation and monitoring, and out-of-pocket expenses;

b.    **Damages for mental anguish and emotional distress**, including anxiety, humiliation, fear, sleeplessness, and impairment of personal well-being;

c.    **Reputational damages**, including harm to Plaintiff's personal and professional reputation;

d.    **Exemplary and punitive damages**, as Defendant's conduct was committed with actual malice, fraud, and gross negligence, warranting the imposition of exemplary damages under Texas Civil Practice & Remedies Code § 41.003;

e.    **Statutory damages and penalties** as provided under the Texas Theft Liability Act, the Texas Harmful Access by Computer Act, and any other applicable statute;

f.        **Pre-judgment and post-judgment interest** at the maximum rate allowed by law;

g.        **Reasonable and necessary attorneys' fees and costs of court**, as recoverable under the Texas Theft Liability Act, the Texas Harmful Access by Computer Act, the Lanham Act, and any other applicable statute or equitable principle; and

h.        **Such other and further relief** as the Court deems just, equitable, and proper.

## VIII. JURY DEMAND

107.        Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## IX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Giorgio Benvenuto respectfully prays that Defendant Niurka del Valle D'Arthenay Guzman be cited to appear and answer herein, and that upon final hearing, Plaintiff have and recover judgment against Defendant as follows:

a.        A Temporary Restraining Order, to be issued immediately without notice, enjoining Defendant from the conduct described herein;

b.        A Temporary Injunction, to be issued following a hearing, enjoining Defendant from the conduct described herein during the pendency of this action;

c.        A Permanent Injunction enjoining Defendant from engaging in any of the conduct described herein;

d.        Actual and compensatory damages in an amount to be determined at trial;

e.        Damages for mental anguish and emotional distress;

f.        Exemplary and punitive damages;

g.        Statutory damages and penalties;

h.        Pre-judgment and post-judgment interest at the maximum legal rate;

i.        Reasonable and necessary attorneys' fees and costs of court;

j.        All costs of suit; and

k.        Such other and further relief, at law and in equity, general and special, to which Plaintiff may show himself justly entitled.

20

Dated: June 19th, 2026

Respectfully submitted,

**FISHERBROYLES**

By:    */s/ Trent D. Stephens*
        Trent D. Stephens
        Texas Bar No. 24008081
        trent.stephens@fisherbroyles.com
        2925 Richmond Ave., Ste. 1200
        Houston, Texas 77098
        (713) 425-3730

        **ATTORNEYS FOR PLAINTIFF**
        **GIORGIO BENVENUTO**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of June, 2026, I have caused the foregoing to be electronically filed with the Court using the Court's CM/ECF System.

*/s/ Trent D. Stephens*
Trent D. Stephens

21